Filed 1/13/15  In re A.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.S. et al., Persons Coming Under the Juvenile Court Law. | D066427 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ003097B-C) |
| v. | |
| SHAUNA S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Emily K. Harlan, Deputy County Counsel, for Plaintiff and Respondent.

Shauna S. appeals the judgment entered following the jurisdiction and disposition hearing in the juvenile dependency case of her minor sons, A.S. and I.A. She contends the evidence was insufficient to support the court's jurisdictional finding under Welfare and Institutions Code section 300, subdivision (b),[1] and the court's dispositional order removing A.S. and I.A. from her custody under section 361, subdivision (c)(1). We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2014, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b) on behalf of two-year-old A.S. and 11-month-old I.A. The Agency alleged that Shauna left the minors unattended in an unsafe home environment. The Agency noted that Shauna failed to reunify with an older child, Damian S., based on Shauna's substance abuse issues.[2] Shauna also failed to comply with a prior voluntary case plan regarding A.S. The Agency concluded that A.S. and I.A. had suffered or were at substantial risk of suffering serious physical harm or illness as a result of Shauna's failure or inability to supervise and protect them.

_____

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    Damian came to the Agency's attention after Shauna admitted using amphetamines or methamphetamines while she was pregnant with him. Shauna did not participate in any reunification services, and the juvenile court terminated her services in that case. Damian's father participated in services and obtained full legal and physical custody of Damian when the juvenile court terminated jurisdiction. Shauna does not have visitation rights to Damian.

2

The voluntary case plan regarding A.S. was implemented when A.S. was born. The Agency was aware of the family based on Damian's prior dependency case. Because Damian's case involved substance abuse issues, the voluntary case plan for A.S. required Shauna to submit to random drug tests and attend Narcotics Anonymous (NA) meetings. The voluntary case plan also required Shauna to complete in-home parenting classes. Although Shauna claimed to have stopped using drugs, she tested positive for methamphetamines several months after A.S.'s birth. She refused to submit to any further drug tests for the Agency. Shauna did not complete her in-home parenting classes and attended only a handful of NA meetings. The voluntary case plan was not successful.

Over a year later, the Agency received a child abuse hotline referral alleging substandard living conditions, drug use, and physical violence at the trailer where Shauna was living with A.S. and I.A. An Agency social worker went to the trailer and found A.S. and I.A. unattended. Four men were outside the trailer, including Alex H., A.S. and I.A.'s father.[3] However, when the Agency social worker asked whether the father was present, Alex did not identify himself. A few minutes later, Shauna returned to the trailer from another house on the property where Alex's grandmother Betty lived. Shauna had been taking a shower. When the Agency social worker told Shauna that A.S. and I.A.

---

[3]    Shauna identified Alex as A.S. and I.A.'s father, although she was not sure. Alex also said he was their father. The minors' birth certificates did not list a father, and Shauna and Alex were not married. Soon after this dependency case began, Alex stopped communicating with the Agency and moved out of California. Alex did not perfect his paternity and remained an alleged father throughout the case. He is not a party to this appeal.

had been left unattended, she yelled and cursed at the men. Shauna explained that she had left A.S. and I.A. with their father.

The trailer was in poor condition. The Agency social worker observed holes in the floor and walls, and the stove had been removed. Clothing and trash covered the floor. A dead rodent lay outside the door to the laundry room. Shauna admitted that the trailer was "not safe" and that A.S. and I.A. stayed at Betty's house when Shauna was away.

The surrounding property was also in disrepair and contained numerous hazards. A fence next to the trailer's porch was low, and Shauna did not prevent A.S. from climbing on it. Near the trailer, the Agency social worker observed an axe, a baseball bat with a nail stuck in the top, other sharp objects, empty liquor bottles, and raw sewage where the minors played outdoors.

A.S. had bruises on his shins and upper arms, as well as small scratches on his upper arms. Shauna said that A.S. had been crawling under the porch when she was watching him. He may have scratched himself on a nail, causing an open wound. A.S. was also visibly dirty on his legs. I.A. did not appear to have any injuries, but he was also visibly dirty on his legs. Later, I.A. was found to have a cut on his head, which Shauna said was caused by A.S. throwing a wooden block.

During the visit, the Agency social worker created a safety plan for A.S. and I.A. The plan required the following: (1) the minors would not be left alone; (2) the minors would stay in Betty's house; (3) the paternal grandfather's girlfriend would help take care of the minors; (4) Shauna and Alex would submit to drug testing the following day; and

4

(5) the family would attend a team decision making meeting (TDM). Shauna said she did not agree with the plan, but she would follow it.

The next day, however, Betty told the Agency that Shauna had slept with A.S. in the trailer overnight. Shauna also did not submit to a drug test as planned. Although she went to the testing location a day later, she did not give an adequate sample and left the location. Several days later, the Agency requested that Shauna test again, but she did not go.

In discussions with the Agency, Shauna denied sleeping in the trailer with A.S., but she gave inconsistent accounts of her whereabouts that night. The Agency created a second safety plan stating that Shauna would stay with a relative or family friend, rather than the property where the trailer was located. Shauna and the Agency agreed on a time for the TDM, but Shauna cancelled it. A family friend told the Agency that the minors stayed at the trailer property when the paternal grandfather's girlfriend babysat them, contrary to the second safety plan.

Shauna stopped communicating with the Agency. Her paternal aunt told the Agency that Shauna had an attorney and would no longer talk to the Agency. Several days later, the Agency filed its petition, obtained a protective custody warrant, and detained A.S. and I.A. in foster care. At the detention hearing, the court found that the Agency had made a prima facie showing under section 300, subdivision (b).

Following the detention hearing, Shauna told the Agency she did not have any place to live other than the trailer. She admitted the dangers the trailer posed to the minors, stating that "I guess if we didn't live there [A.S.] wouldn't have so many cuts." In

5

foster care, A.S. was active, aggressive, and angry, though he sustained few, if any, new scratches and bruises. Shauna promised to clean up the trailer and surrounding property. The Agency asked Shauna to submit to drug testing. Shauna admitted to drinking alcohol the night before, but her test was negative for alcohol and drugs.

In conversations with the Agency, Shauna disclosed that she began using marijuana at age 13 and methamphetamines at age 14. She stated that she uses marijuana about every three months. Despite her positive drug test during A.S.'s voluntary case, Shauna claimed she had stopped using methamphetamines after Damien was born.

Soon afterwards, the Agency learned that Shauna had again tested positive for methamphetamines. The test results showed high levels of methamphetamines in Shauna's blood. Before the test, Shauna told the Agency it would be clean because she had not used methamphetamines in years. After the test, Shauna admitted using drugs several days beforehand. She said she used methamphetamines only sporadically and "not every day or even every week."

The Agency amended its petitions to add a second count under section 300, subdivision (b). The second count alleged that Shauna had used methamphetamines, that she had admitted a history of such use, and that her prior use had led to the Agency's involvement with her older son Damian. The Agency concluded that A.S. and I.A. had suffered or were at substantial risk of suffering serious physical harm or illness as a result of Shauna's abuse of illegal drugs and her consequent failure to protect and supervise the minors.

Shauna was referred to ParentCare, a drug treatment program. She did not complete enrollment. The Agency subsequently recommended that Shauna complete an inpatient drug treatment program.

Before the contested jurisdiction and disposition hearing, an Agency social worker viewed Shauna's progress cleaning the trailer property. Shauna had done some work on the surrounding property. She had not completed work inside the trailer, so she did not show the social worker the trailer itself.

At the hearing, the Agency recommended that the court sustain the allegations of the petitions, that A.S. and I.A. remain in out-of-home care, and that Shauna receive family reunification services. The court received several Agency reports into evidence and heard testimony from an Agency social worker. The court sustained the allegations of the petitions, removed A.S. and I.A. from Shauna's custody, and ordered them placed with a nonrelative extended family member. The court authorized supervised visitation and gave the Agency discretion to lift supervision, to allow Shauna to live in the caregiver's home with the minors, and to grant a 60-day trial visit with Shauna. Shauna appeals.

### DISCUSSION

### I

Our standard of review is well-settled: " 'On appeal, the "substantial evidence" test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.]' " (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) " 'In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the

7

sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.' [Citation.] ' "If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed . . . ." ' " (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 (*Rocco M.*).) "Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw." (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

" ' "However, substantial evidence is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].' [Citation] 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" [Citation.]' " (*In re Drake M.* (2012) 211 Cal.App.4th 754, 763 (*Drake M.*), italics omitted; see *In re Noe F., supra*, 213 Cal.App.4th at p. 367.)

## II

### A

Shauna first challenges the juvenile court's jurisdictional finding under section 300, subdivision (b). As she acknowledges, the minors' father Alex has not appealed.

8

We therefore will not reverse the court's jurisdictional finding even if the allegations as to Shauna cannot be sustained. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Nonetheless, "we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*Drake M., supra*, 211 Cal.App.4th at pp. 762-763.) Because the jurisdictional findings here support the court's dispositional orders, and because the jurisdictional findings could have an effect on future child custody determinations, among other things, we exercise our discretion to reach the merits of Shauna's challenge. (See *id.* at p. 763.)

Section 300 provides, in relevant part, as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b)(1) The child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." " 'The basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm.' " (*In re J.N., supra*, 181 Cal.App.4th at p. 1022.) The juvenile court must find that the

9

child is a person described in section 300 by a preponderance of the evidence. (§ 355, subd. (a).)

B

In the first count of the amended petitions, the Agency alleged that A.S. and I.A. were at substantial risk of harm as a result of Shauna's failure or inability to supervise and protect them. The evidence supported the juvenile court's finding sustaining this allegation. Shauna subjected the minors to numerous hazards in their trailer and the surrounding property, including a dilapidated fence where she allowed A.S. to play, raw sewage near the minor's play area, an axe, a baseball bat with a nail stuck in the top, other sharp objects, and empty liquor bottles. Under Shauna's care, A.S. crawled underneath the porch of the trailer, where there were exposed nails, and sustained at least one open wound. Shauna admitted that the trailer was "not safe" and that A.S. would not have received so many cuts if they lived in better conditions. Shauna also left A.S. and I.A. alone in the trailer, where holes and other dangers confronted the minors. Although Shauna claimed to have left the minors in the care of their father, the evidence showed that Shauna's trust in him was misplaced.

Despite Shauna's recognition that the trailer was "not safe" and the Agency's safety plan requiring the minors to stay elsewhere, Shauna violated the plan by sleeping with A.S. in the trailer overnight. Shauna also allowed the minors' paternal grandfather's girlfriend to babysit them. The girlfriend cared for the minors at the property where the trailer was located, a violation of the Agency's second safety plan.

10

By the time of the jurisdiction and disposition hearing, there was no evidence the trailer had been made safe for the minors. Given Shauna's past pattern of allowing the minors to stay at the trailer or the surrounding property, despite significant hazards and the Agency's safety plans, the juvenile court could reasonably find the minors were at substantial risk of serious harm at the time of the hearing. There was a substantial risk Shauna would again seek to reside at the trailer, the surrounding property, or similarly dangerous housing. Shauna's drug use, discussed further below, supports this finding as well.

Shauna's contrary position is unpersuasive. She emphasizes facts and inferences contrary to the court's finding, which we may not credit. (See *Rocco M., supra*, 1 Cal.App.4th at p. 820.) She claims that she and the minors could have stayed at another location, either at Betty's house or with the minors' paternal aunt (where the minors were eventually placed). However, Shauna cites no evidence that Betty or the paternal aunt would have allowed Shauna to stay with them at that time. More importantly, the ability of Shauna to secure other housing is not dispositive. Shauna had other housing available to her while the safety plan was in effect, but she chose to stay in the trailer with A.S. The danger to the minors is not merely the condition of the trailer and surrounding property, but Shauna's willingness to place the minors at risk by residing there. Substantial evidence supports the court's finding that the minors remained at risk at the time of the hearing.

C

The second count of the Agency's amended petitions alleged that A.S. and I.A. were at substantial risk of suffering serious physical harm or illness as a result of Shauna's abuse of illegal drugs and her consequent failure to protect and supervise the minors. The evidence supports the juvenile court's true finding on this allegation as well. Shauna had a long history of illegal drug use. Despite her claim that she stopped using drugs after her older son Damian's birth, she tested positive for methamphetamines during the initial voluntary case for A.S. and again during this dependency case. She also missed several tests. After the latest positive test, Shauna admitted smoking marijuana every three months and using methamphetamines periodically. Shauna's history of drug treatment was also unsatisfactory. She did not participate in any services during Damian's dependency case, and she attended only a few drug treatment sessions during the initial voluntary case for A.S. At the time of the jurisdiction and disposition hearing, Shauna's drug problem remained untreated.

Given the minors' young ages, Shauna's substance abuse posed a substantial risk to their physical well-being. (See *Drake M., supra*, 211 Cal.App.4th at p. 767.) At their ages, "the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*Rocco M., supra*, 1 Cal.App.4th at p. 824.) "[I]n cases involving [such children], the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*Drake M.,* at p. 767.) Moreover, the juvenile court could reasonably

find that Shauna's drug use had contributed to her neglect of A.S. and I.A., including their dangerous living arrangements described above.

These facts therefore distinguish this case from *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003-1004, on which Shauna relies, where the court found a parent's sporadic use of marijuana and methamphetamines was not sufficient to support a finding under section 300, subdivision (b). *In re Destiny S.* involved an older, 11-year-old child who did not suffer any substantial ill effects from her mother's drug use. (*In re Destiny S.*, at pp. 1003-1004.) Unlike the minors involved in this case, "11-year-old Destiny 'was old enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life.' " (*Id.* at p. 1004.)

Shauna also relies on *Drake M.* to argue that the court's jurisdictional finding required a showing of drug *abuse*, as opposed to mere drug *use*, based on the definition of substance abuse contained in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. (*Drake M., supra*, 211 Cal.App.4th at p. 766.) However, the *Drake M.* definition "is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court . . . ." (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1218; see *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726.) Here, Shauna's history of drug use (including while pregnant with Damian), her repeated positive drug tests (during her children's dependency cases), her false statements regarding her drug use, and the substantial evidence of her neglect of A.S. and I.A. adequately demonstrates drug abuse within the meaning of the statute. (See *In re Christopher R.,* at pp. 1218-1219; *In re Rebecca C.*, at pp. 726-727.) This drug abuse

13

remained untreated at the time of the hearing, creating a substantial risk of serious physical harm to the minors. (See *Drake M.,* at p. 767.) Substantial evidence supports the juvenile court's finding.

### III

Shauna next challenges the juvenile court's dispositional order removing A.S. and I.A. from her custody. "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence" (§ 361, subd. (c)) that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (*Id*., subd. (c)(1).)

"By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the 'bias of the controlling statute is on family preservation, *not* removal.' " (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.) However, " ' "[t]he parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]' " (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126 (*John M.*).)

14

The evidence here supports the juvenile court's removal order. As we have discussed, at the time of the jurisdiction and disposition hearing, Shauna's conduct placed A.S. and I.A. at substantial risk of serious physical harm. Based on Shauna's history of violating the Agency's safety plans, her noncompliance with reunification services in Damian's case, and her recent positive drug test, the juvenile court could reasonably conclude that removal was the only reasonable means to protect the minors' safety. (See *John M., supra*, 212 Cal.App.4th at p. 1126.)

Shauna argues that reasonable means short of removal existed to protect the minors' safety, again claiming that she could have stayed with the minors at the paternal aunt's home. As we have already noted, however, there was no evidence the paternal aunt would have allowed Shauna to reside there. Shauna's remaining contentions are similarly unpersuasive. The fact that A.S. and I.A. had not yet been seriously injured does not mean that removal was inappropriate. (See *John M., supra*, 212 Cal.App.4th at p. 1126.) Nor are the court's findings undermined by Shauna's allegedly improving parenting style during supervised visits. The juvenile court was entitled to make its findings notwithstanding such improvement. Substantial evidence supports the court's dispositional order.

DISPOSITION

The judgment is affirmed.


                                                    HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


IRION, J.